UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LEONARD DARRELL PETTY,

        Petitioner,

v.

STEVE HAMMER, warden,

        Respondent.

CIVIL NO. 13-CV-402 (MJD/TNL)

REPORT
&
RECOMMENDATION

Leonard Darrell Petty, MCF-Rush City, 7600 525th Street, Rush City, Minnesota 55069, *pro se* Petitioner; and

Matthew Frank and Steven H. Alpert, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1100, St. Paul, Minnesota 55101-2128; and Tara C. F. Lopez, **MILLE LACS COUNTY ATTORNEY'S OFFICE**, 225 Sixth Street SE, Milaca, Minnesota 56353, for Respondent.

## I. INTRODUCTION

This matter is before the Court, Magistrate Judge Tony N. Leung, on a petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Docket No. 1). The action has been referred to the undersigned magistrate judge for report and recommendation to the Honorable Michael J. Davis, Chief Judge of the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.2(b). For the reasons set forth below, this Court **RECOMMENDS** as follows: the Petition for Writ of Habeas Corpus (ECF No. 1) be **DENIED**; this action be **DISMISSED WITH PREJUDICE**; and the certificate of appealability be **DENIED.**

## II. BACKGROUND

Petitioner Leonard Darrell Petty brings the present petition challenging his confinement, arguing (1) the trial court's refusal to conduct an *in camera* inspection of confidential records violated his due process rights under the Fourteenth Amendment; (2) the trial court erred in allowing a state witness to "vouch for the credibility of [his] accuser," (Reply Mem. at 3); (3) his conviction was the result of cumulative error in violation of his Due Process rights; and (4) his sentence is disproportionate and therefore a violation of his Eighth Amendment rights.

The Minnesota Court of Appeals set forth the facts of Petty's case as follows:

> Appellant Leonard Darrel Petty was charged with 13 counts of criminal sexual conduct, three of which were dismissed on the state's motion before trial. The victim was the 14-year-old daughter of [Petty]'s live-in girlfriend. The charges were tried to a jury.
>
> The victim and her father had a conversation about appropriate behavior, during which father told the victim that it is inappropriate to change clothes or be naked in front of another person. In response, the victim stated that she had seen [Petty] naked from the waist down, that [Petty] had walked in on her when she was bathing, and that she had asked him to leave several times. She also stated or implied that [Petty] had sexually abused her. Father brought the victim to the Princeton Police Department, where father gave a recorded statement to an officer.
>
> The next day, Margaret Carney interviewed the victim at Midwest Children's Resource Center (MCRC). The victim stated that the sexual abuse sometimes occurred in the bedroom [Petty] shared with her mother and sometimes in the basement. The first incident occurred in the basement on a summer afternoon on a weekend while the victim's mother was at work. The victim stated that [Petty] came downstairs and said something that made her scared or confused and then he "[p]retty much took my clothes off." When asked what happened next, the victim said "[s]ex" and stated that only her back was involved that time. Using an anatomically correct

drawing of a girl, Carney asked the victim to point to the body part on the back that the victim was talking about. The victim pointed to a body part, which she referred to as a "butt," and stated that [Petty] had put his penis in the crack part, which hurt her. The victim stated that [Petty] sometimes used lotions on his penis before putting it in her butt and that she had seen him use something black, which he kept in a dresser drawer, on his penis.

The victim stated that [Petty] also had put his penis between her breasts and that it felt "[w]eird" and "uncomfortable" but did not hurt her. The victim also stated that [Petty] "like[d] to hold onto my breasts and stuff and just move them around" and that it felt "[k]ind of weird and I guess kind of good." The victim stated that [Petty] licked her breasts with his tongue and that it felt "[k]ind of good I guess. I kind of like that." The victim stated that [Petty] asked her "to lick one spot on his penis," but she refused. When asked about [Petty]'s clothes, the victim said that he always removed his pants and sometimes removed all of his clothing.

Princeton Police Officer Todd Frederick executed a search warrant for the victim's home. Numerous lotions or lubricants were found in dresser drawers in the bedroom [Petty] shared with the victim's mother.

Mille Lacs County Child Protection Investigator Jessy Vittum investigated the allegations of abuse. With Vittum present, the victim and her mother participated in a written conversation, in which the mother wrote down questions, and the victim responded. The victim disclosed that she had had anal sex with [Petty]. The victim described having her head on the couch and kind of standing up during the incident. The victim stated that [Petty] had touched her boobs and butt with his penis on repeated occasions and that sometimes all of her clothes were off. Mother testified that, a few weeks before the abuse allegations arose, she found in her dresser drawer an empty black bottle that had contained lubricant, and she threw it away.

At trial, the victim testified that [Petty] touched her "[c]hest and butt" with his penis. Drawing a picture, the victim identified two circles as boobs and a square in between the circles as the chest. The victim testified that [Petty] touched her chest with his penis and that he also touched her boobs with his mouth and his hands. The victim testified that it "kinda felt good" when appellant touched her boobs

3

with his hands but that it felt weird and hurt when he put his penis in her butt.

The victim identified a couch and a chair in the basement and the bedroom her mother shared with appellant as the locations where the abuse occurred. The victim described having her knees on the couch and the front of her head on the edge of the couch when an incident of abuse occurred. Another time, she sat on a chair while [Petty] touched her chest with his penis. In the bedroom, [Petty] touched her butt with his penis and touched her chest. The victim recalled [Petty] using a towel to clean up something wet after the abuse occurred. The victim testified that [Petty] asked for her to "suck one spot on his penis," but she did not do it. The victim testified that the abuse occurred when her mother was at work and that [Petty] told the victim not to tell her mother about it.

The victim's homeroom teacher testified that the victim was late for school two times in September 2009 and six times in October 2009. Normally, the victim arrived at school five or ten minutes early. The school-bus driver testified that, at the beginning of October 2009, the victim stopped riding the school bus. For the first week or so, [Petty] would come to the door and tell the bus driver that the victim was not home.

The jury found [Petty] guilty of 14 counts of criminal sexual conduct and not guilty on four counts. The district court denied [Petty]'s new-trial motion. Following a sentencing trial, the district court found that five aggravating factors existed and sentenced [Petty] to an executed term of 360 months in prison, a double upward durational departure from the presumptive sentence.

*State v. Petty*, No. A10-1837, 2011 WL 6015029, at *1-3 (Minn. Ct. App. Dec. 5, 2011).

On direct appeal, Petty argued that (1) the district court erred by "declining to conduct an in camera review of the victim's confidential records" *id.* at *3, (2) "allowing Vittum to testify that she was 'sure' that the victim was sexually abused," *id.* at *4, (3) the cumulative effect of several erroneous evidentiary rulings violated his rights to due process and a fair trial, (Pet., ECF No. 1, Att. A), and (4) the trial court erred by "not

4

specifically cit[ing] [Petty's two prior convictions of violent crimes] as a ground warranting departure at the sentencing hearing." *Petty*, 2011 WL 6015029 at *8; *see also* Pet., Att. A. The Minnesota Court of Appeals rejected all of Petty's arguments and affirmed both his conviction and his sentence. *Id.* The Minnesota Supreme Court denied review on February 14, 2012.

After his direct appeal was completed, Petty filed the instant petition for a writ of habeas corpus under 18 U.S.C. § 2254 on February 19, 2013, asserting the following grounds for relief: (1) the trial court's decision not to conduct an in camera review of the victim's confidential files is contrary to *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987); (2) allowing Vittum's "vouching" testimony was reversible error; (3) his conviction was the result of cumulative error; and (4) his sentence was disproportionate in violation of Supreme Court precedent. (Pet. Att. A; Reply, ECF No. 12.) Respondent filed a memorandum in opposition to the Petition, and Petty filed a reply memorandum.

### III. ANALYSIS

#### A. Standard of Review

Section 2254(d) of Title 28 provides that

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

"This standard is difficult to meet." *Metrish v. Lancaster*, 569 U.S. ---, --- (2013) (slip op., at 4-5.) For purposes of § 2254, "clearly established federal law"

5

includes only "'the holdings, as opposed to the dicta, of [Supreme Court] decisions.'" *Howes v. Fields*, 565 U.S. ---, --- (2012) (slip op., at 4) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). And an "unreasonable application of" those holdings must be not merely wrong, but "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). Instead, a state prisoner seeking habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. ---, --- (2011) (slip op., at 13).

A state court decision is "contrary to" Supreme Court precedent if it "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent if it unreasonably applies the correct legal principle to the facts of the prisoner's case. *Id.* at 413. A federal court may not issue the writ simply because it concludes that the state court decision applied clearly established federal law erroneously or incorrectly; the application of the law must also be unreasonable. *Lyons v. Leubbers*, 403 F.3d 585, 592 (8th Cir. 2005).

A federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

Section 2254(c) provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." To satisfy this exhaustion requirement, the petitioner must fairly present the federal nature of his claim to each level of the state courts. *O'Sullivan*, 526 U.S. at 845. A federal claim is fairly presented when the petitioner refers "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997). If a court "must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the cases," then that federal claim has not been fairly presented. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

When a petitioner has failed to present federal constitutional claims fairly in state court, the federal court must determine whether the state procedural rules would allow a hearing on the unexhausted claim in a state court proceeding. *McCall*, 114 F.3d at 757. If the state's procedural rules would preclude a hearing on the merits, the petitioner has procedurally defaulted and is likewise procedurally barred from obtaining federal habeas relief, unless cause and prejudice, or fundamental miscarriage of justice, can be demonstrated. *Id.* at 758. A claim that is procedurally defaulted under state law is barred from federal habeas review only if the state procedural rule is "firmly established" and "regularly followed." *Oxford v. Delo*, 59 F.3d 741, 744 (8th Cir. 1995).

### B. Refusing to Conduct an *In Camera* Review of Confidential Documents Did Not Violate *Pennsylvania v. Ritchie*

Petty first argues that the trial court's refusal to conduct an *in camera* review of the victim's records related to her Asperger's Syndrome violated his due process rights. Petty invokes his right to compulsory process under the Constitution,[1] arguing that the Minnesota Court of Appeals unreasonably applied *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), by not ordering an *in camera* review, and asserts that a remand is necessary so the trial court can conduct an *in camera* review.

Petty's reliance on *Ritchie* is misplaced. In *Ritchie*, the Supreme Court held that a defendant's Fourteenth Amendment due process rights entitled him to have a trial court conduct an *in camera* review of a state agency's confidential file to determine whether any of the information contained in the file was material to his defense. 480 U.S. at 60. The issue that the Supreme Court addressed in *Ritchie*, however, is not on all fours with the issue Petty presents in his petition. "The statue at issue in *Ritchie* [conferring confidentiality on the sought-after documents]. . . contemplated *some* use of agency records in judicial proceedings, and provided that information would be disclosed when directed by court order." *Johnson v. Norris*, 537 F.3d 840, 846 (8th Cir. 2008) (citing *Ritchie*, 480 U.S. at 58) (emphasis in original). In its analysis, the Supreme Court "expressed no opinion" on whether such an *in camera* review would be appropriate had the statute "protected the files from disclosure to *anyone*, including law enforcement and

---

[1] Claims of this sort are traditionally evaluated under the broader protections of the Due Process Clause. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987) (citing *United States v. Bagley*, 473 U.S. 667 (1985), and *Brady v. Maryland*, 373 U.S. 83 (1963)).

judicial personnel." *Id.* Importantly, *Ritchie* does "not establish a legal rule that answers whether a State's psychotherapist-patient privilege must yield to an accused's desire to use confidential information in defense of a criminal case." *Id.* Rather, under *Ritchie*, where files are granted qualified confidentiality, a criminal defendant's right to compulsory process requires the trial court to conduct an *in camera* review of the files to determine whether "the information is material to the defense of the accused." *Ritchie*, 480 U.S. at 58 (internal quotation marks omitted). Where the files in question are granted unqualified confidentiality, however, a criminal defendant's rights do not necessarily require such a review. *See id.*; *Johnson*, 537 F.3d at 846; *Newton v. Kemna*, 354 F.3d 776, 781-82 (8th Cir. 2004).

Applying *Ritchie* to the instant matter, the Court determines that Petty's right to compulsory process does not overcome the confidentiality granted to the files at question. Unlike the protective statute at issue in *Ritchie*, the physician-patient and psychotherapist privileges under Minnesota law may be waived only by the person entitled to assert them. Minn. Stat. § 595.02 subd. 1(d), (g); *see Johnson*, 537 F.3d at 846 (psychotherapist privilege), *and Newton*, 354 F.3d at 781-82 (physician-patient privilege). Following the reasoning in *Ritchie*, the Minnesota Legislature did not contemplate some use of confidential records at question in criminal prosecutions without the consent of the privilege holder. *See Ritchie*, 480 U.S. at 58 ("Given that the Pennsylvania Legislature contemplate *some* use of CYS records in judicial proceedings, we cannot conclude that the statute prevents all disclosure in criminal prosecutions."); *see also Johnson*, 537 F.3d at 846 ("Unlike the confidentiality protection for the agency files in *Ritchie*, the

9

psychotherapist privilege in Arkansas is unqualified, and it is waivable only by the person who is entitled to assert it. Ark. R. Evid. 503(b)-(c). *Ritchie* thus does not dictate the conclusion in this case.").

In light of the foregoing, the Court cannot find as a matter of law that the trial court's decision not to conduct an *in camera* review of the victim's confidential files was either contrary to or an unreasonable application of Supreme Court precedent. Accordingly, Petty's compulsory-process challenge to his conviction must be denied.

### C. Vittum's Testimony Was Not Reversible Error

Petty also argues that Vittum's testimony "vouching" for the victim's credibility amounted to plain error. On direct examination, Vittum testified[2] to have "substantiated sexual abuse of the victim." *Petty*, 2011 WL 6015029 at *5. On cross-examination, Vittum testified that the agency for whom she worked applied a preponderance-of-the-evidence standard, "or more likely than not," when assessing whether sexual abuse occurred. *Id.* On redirect, Vittum testified that her personal standard was that she was "sure it happened," and on re-cross, she testified that her standard of being "sure" was the same as the agency's preponderance-of-the-evidence standard. *Id.*

Opinion testimony concerning the credibility of a particular statement invades the jury's exclusive province of determining credibility of witnesses and weighing evidence. *United States v. Azure*, 801 F.2d 335, 340-41 (8th Cir. 1986). "[S]uch testimony is capable at times of so bolstering a witness' testimony as artificially to increase its

---

[2] The relevant portion of Vittum's testimony is excerpted in its entirety in the Government's brief for the Minnesota Court of Appeals. *See* ECF No. 7-2 at 39-41.

probative strength with the jury," and its very admission "may in some situations . . . constitute reversible error." *Homan v. United States*, 279 F.2d 767, 772 (8th Cir), *cert. denied*, 364 U.S. 866 (1960). The matter before the Court, however, is not whether state evidentiary rulings were erroneous, but "whether the particular evidence admitted infringed on 'a specific constitutional protection or was so prejudicial as to deny due process.'" *Maurer v. Dep't of Corr.*, 32 F.3d 1286, 1289 (8th Cir. 1994) (quoting *Hobbs v. Lockhart*, 791 F.2d 125, 127 (8th Cir. 1986)).

Even presuming without deciding that Vittum's testimony was improper, the Court must determine whether the testimony "invaded the jury's credibility determination to such an extent that it denied [Petty] due process of law." *Maurer*, 32 F.3d at 1289. To make this determination, it is necessary to "review the totality of the facts in the case and analyze the fairness of the particular trial under consideration." *Hobbs*, 791 F.2d at 128. Where the evidence is close, evidentiary error will more likely infect a trial with fundamental unfairness. *See id.*; *United States v. Stuart*, 923 F.2d 607, 612 (8th Cir.), *cert. denied*, 499 U.S. 967 (1991). "[T]he manner in which the complained of evidence was presented, whether the evidence was highly persuasive, whether it was used in closing argument, and whether the defense was able to effectively counter it" are all important considerations. *Maurer*, 32 F.3d at 1289 (citing, *inter alia*, *United States v. Roy*, 843 F.2d 305, 309 (8th Cir.), *cert. denied*, 487 U.S. 1222 (1988)).

Considering Vittum's testimony in its entirety, the manner in which it was presented weighs against finding that it invaded the jury's province of determining credibility to such an extent that it violated Petty's right to a fair trial. Petty's counsel did

not object to Vittum's statement that she substantiated the abuse. Indeed, on cross-examination, Vittum clarified that she substantiated the abuse only to a preponderance-of-the-evidence standard. And after Vittum stated that she was "sure" the abuse had occurred, she testified on re-cross that her standard of being "sure" was the same as the preponderance-of-the-evidence standard. The transcript makes clear that Vittum believed that there was at least a 51% chance that the sexual abuse had occurred. This testimony was not repeated; the state did not emphasize it throughout the trial or repeat it in closing statements.

In addition to Vittum's testimony, the school bus driver testified that the victim did not ride the bus to school on days that coincide with the days of the alleged abuse, and the victim's school records show that the victim was late to school on those days. Given the manner in which the complained-of testimony was presented to the jury, the immediate clarification that occurred while Vittum was still on the stand, and the corroborating evidence on which the jury could have based its verdict had Vittum's testimony been excluded, the jury's ultimate determination was not based "largely, if not exclusively" on its determination of the victim's credibility. *Maurer*, 32 F.3d at 1290.

Accordingly, in light of the totality of Vittum's testimony and the corroborating evidence entered at trial, the Court determines that any error in admitting the complained-of testimony was harmless.

### D. Cumulative Error

Petty also argues that the cumulative effect of multiple state court errors denied him a fair trial. The "[c]umulative effect of trial errors," however, is not "grounds for

habeas relief." *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996) (citing, *inter alia*, *United States v. Stewart*, 20 F.3d 911, 917-18 (8th Cir. 1994); *Wharton-El v. Nix*, 38 F.3d 372, 375 (8th Cir. 1994), *cert. denied*, 513 U.S. 1162 (1995)).

The only errors that Petty specifically references are the admission of context evidence concerning the victim's Asperger's Syndrome and the admission of Vittum's "vouching" evidence. This Court determined above that Petty did not challenge the admissibility of evidence concerning the victim's Asperger's Syndrome in his petition, and the admission of Vittum's testimony did not rise to the level of a constitutional violation. And "[e]rrors that are not unconstitutional individually cannot be added together to create a constitutional violation." *Wainwright*, 80 F.3d at 1233; *see also McDowell v. Leapley*, 984 F.2d 232, 235 (8th Cir. 1993) (quoting *Scott v. Jones*, 915 F.2d 1188, 1191 (8th Cir. 1990) (reinforcing the adage that "cumulative error is not ground for federal habeas relief as 'each habeas claim must stand or fall on its own.'").

Petty's reliance on *Estelle v. McGuire*, 502 U.S. 62 (1991), is unavailing. *McGuire* concerned the admissibility of evidence establishing battered child syndrome in a trial where no evidence linked the accused to the dead child's prior injuries and the jury instruction concerning the use of such evidence. The Court determined that neither the admission of the contested evidence nor the fact that "the jury instruction was not as clear as it might have been" "'so infused the trial with unfairness as to deny due process of law.'" *Id.* at 483-84 (quoting *Lisenba v. California*, 314 U.S. 219, 228 (1941)). Here, as in *McGuire*, neither of the trial court's asserted errors so infused the trial with unfairness as to deny Petty due process of law. As determined above, the trial court did not err in

13

declining to conduct an *in camera* review of the victim's confidential files, and even if it were error to allow Vittum to testify that she was "sure" the alleged abuse occurred, such error was harmless. Accordingly, to the extent it is based on the cumulative effect of erroneous evidentiary rulings, Petty's petition must not be granted.

### E. Petty's Challenge to His Sentence Fails

Petty finally argues that his sentence is disproportionate and therefore contrary to *Solem v. Helm*, 483 U.S. 277 (1983), *Harmelian v. Michigan*, 501 U.S. 957 (1991), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

The Court disagrees. Even if Petty's challenge were not procedurally barred, Petty's sentence is not disproportionate in violation of the Eighth Amendment. "In general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Delacruz-Soto*, 414 F.3d 1158, 1168 (10th Cir. 2005) (citation omitted). "The fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is 'properly within the province of legislatures, not courts.'" *United States v. Martin*, 677 F.3d 818, 821 (8th Cir. 2012) (quoting *Harmelin*, 501 U.S. at 998 (internal quotation and citation omitted)). It is "exceedingly rare for a non-capital sentence falling within the authorized statutory range to constitute a violation of the Eighth Amendment." *United States v. Paton*, 535 F.3d 829, 837 (8th Cir. 2008).

"In considering whether a sentence is unconstitutionally disproportionate to a crime, '[courts] first address the gravity of the offense compared to the harshness of the penalty.'" *Id.* 535 F.3d at 837. The trial court sentenced Petty on one conviction, first-

14

degree criminal sexual conduct, to the maximum term of 360 months of imprisonment. Although this is a double upward departure from the presumptive sentence of 180 months under the Minnesota Sentencing Guidelines, it is within the statutory range set by the Minnesota Legislature. *See Petty*, 2011 WL 6015029, at *7-8 (citing Minn. Sent. Guidelines II.D.2.b.(3) (2008)).

"In weighing the gravity of the offense with the harshness of the penalty, we consider the 'harm caused or threatened to the victim or to society.'" *Martin*, 677 F.3d at 821 (quoting *United States v. Wiest*, 596 F.3d 906, 912 (8th Cir. 2010)). In its special verdict addressing aggravating factors, the trial court noted that Petty had two earlier convictions—one for third-degree assault that resulted in substantial bodily harm, and one for bank robbery. (ECF No. 7-1 at 80.) In light of those earlier convictions, Petty constituted a threat to public safety as defined by Minn. Stat. § 609.1095, subd. 2(2)(ii). The trial court also found that Petty had committed multiple crimes of criminal-sexual conduct over a period of time and that he "used his position of trust, care, and confidence in the commission of the crimes for which he was convicted." (*Id.* at 82-83.) In the context of a twice-convicted felon using his position of trust, care, and confidence in committing multiple acts of criminal-sexual conduct against a special-needs child, the Court determines that Petty's sentence, which was within the statutory range set by the Minnesota Legislature, was not grossly disproportionate to his offense. Accordingly, Petty's Eighth Amendment challenge to his sentence should not succeed.

For purposes of completeness, the Court has analyzed Petty's disproportionality argument. Petty's Eighth Amendment challenge, however, is procedurally barred. This is

the first time that Petty has challenged his sentence as disproportionate in violation of the Eighth Amendment. On direct appeal, he asserted that the trial court "erred by imposing a durational departure where the factors it relied on were in applicable [sic], duplicative of elements of offenses of convictions, or otherwise typical of the serious type of offenses for which Petty was convicted." (Pet., Att. A.) In his Petition before this Court, Petty challenges "the district court sentencing findings and double durational departure from the sentencing guidelines, constituting a disproportionate sentence" as "contrary to federal law as set forth in" *Solem*, *Harmelian*, and *Apprendi*. (*Id.* Att. B.) The Government argues that because Petty failed to raise his disproportionality argument on direct appeal, there is no longer a state court remedy for Petty to address his unexhausted claim, and this Court should deem it procedurally barred.

When a petitioner has failed to present federal constitutional claims fairly in state court, the federal court must determine whether the state procedural rules would allow a hearing on the unexhausted claim in a state court proceeding. *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997). If the state's procedural rules would preclude a hearing on the merits, the petitioner has procedurally defaulted and is likewise procedurally barred from obtaining federal habeas relief, unless cause and prejudice, or fundamental miscarriage of justice, can be demonstrated. *Id.* at 758. A procedurally defaulted claim under state law is barred from federal habeas review only if the state procedural rule is "firmly established" and "regularly followed." *Oxford v. Delo*, 59 F.3d 741, 744 (8th Cir. 1995).

Here, Petty admits that his disproportionality argument has not been presented to the state courts. (Reply Mem. at 14.) Minnesota Statutes § 590.01 governs the grounds

16

for relief a prisoner may assert in a petition for postconviction relief. *See, e.g.*, *Hughes v. State*, 815 N.W.2d 602, 604 (Minn. 2012). A party who has pursued a direct appeal may not seek postconviction relief "based on grounds that could have been raised on direct appeal of the conviction or sentence." *Id.* (quoting Minn. Stat. § 590.01). There is no question that this rule is firmly established and regularly followed by Minnesota courts. *See, e.g.*, *Murray v. Hvass*, 269 F.3d 896, 899 (8th Cir. 2001); *Buckingham v. State*, 799 N.W.2d 229, 231 (Minn. 2011); *White v. State*, 711 N.W.2d 106, 109 (Minn. 2006) (citing *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976)). Although Petty argued on direct appeal that the trial court erred by imposing a double durational departure, his claim of error did not include a claim that the resulting sentence was disproportionate in violation of the Eighth Amendment's ban on cruel and unusual punishment. (*See* Pet., Att. A (listing grounds raised on direct appeal).) Petty did not raise his disproportionality argument to the Court of Appeals when appealing his sentence. Therefore, Petty's disproportionality argument does not meet the exhaustion requirement of § 2254(c) and is procedurally barred.

### IV. CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." 28 U.S.C. § 2254. A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Hardy v. United States*, No. CIV. 01-634 (JRT), CR 98-2751 (JRT/JGL), 2002 WL 1752215, at *5 (D.

Minn. July 29, 2002). "To make such a showing, the issues must be debatable among reasonable jurists, a court must be able to resolve the issues differently, or the case must deserve further proceedings." *Hardy*, 2002 WL 1752215, at *5. Petty has made no such showing in the instant case. Therefore, this Court recommends that certificate of appealability be denied.

## V. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (ECF No. 1) be **DENIED**;

2. This action be **DISMISSED WITH PREJUDICE**; and

3. The certificate of appealability be **DENIED**.

Date:  June 5, 2013                                  s/ Tony N. Leung
                                                        Tony N. Leung
                                                        United States Magistrate Judge
                                                        District of Minnesota

                                                        *Petty v. Hammer*
                                                        File No. 13-cv-402 (MJD/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or

judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court by **June 20, 2014**.